UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    -v-                                            CASE NO: 5:23-CR-0079 (BKS)
                                                                               **REPLY BRIEF**

AUSTIN TENNANT,

                Defendant.
_____

      Austin Tenant ("Austin") has moved to suppress evidence of images viewed without a warrant by Email Service Providers ("ESPs") Instagram, Discord, and Snapchat; the National Center for Missing and Exploited Children ("NCMEC"); and Investigator Robert J. Obrist. (Dkt. No. 38.) The government has opposed the motion. (Dkt. No. 46.) In opposition to the motion, the government argues that no Fourth Amendment violation occurred because (1) Austin did not have a legitimate, reasonable expectation of privacy in the files (Dkt. No. 46 at ECF 9-15); and (2) the private search exception to the warrant requirement applies (*Id*. at ECF 15-21). The government further argues that suppression is not required even if the warrantless searches violated the Fourth Amendment. *Id*. at ECF 22-25. This reply brief addresses arguments raised in the government's opposition. For arguments not addressed in this reply brief, the defense relies on its moving papers.

    **I.    AUSTIN HAD A REASONABLE EXPECTATION OF PRIVACY IN HIS PRIVATE FILES.**

      The government argues that "there is no expectation of privacy for child pornography files." (Dkt. No. 46 at ECF 13.) The Second Circuit has indicated that a file's status as contraband does not negate the possessor's expectation of privacy. As the government acknowledges, the Second Circuit has "assumed without deciding that a peer-to-peer program user retained a reasonable expectation of privacy in child exploitation images he uploaded." (Dkt. No. 46 at ECF 13 n.9 (citing *United States v. Wilbert*, 818 F. App'x 113, 114 (2d Cir. 2020)). Thus, although the Second Circuit has not directly decided the issue, it has signaled that it would not adopt the government's position.

      The government next argues that Austin lacked a reasonable expectation of privacy in his private file because the ESPs' terms of service prohibit child exploitation images (Dkt. No. 46 at 13)

1

and caution users that content may be monitored (*Id*. at ECF 11-12). The government cites *United States v. Bebris*, 4 F.4th 551, 557 (7th Cir. 2021). (Dkt. No. 46 at ECF 13.) The government states that the Seventh Circuit in that case "found that the district court properly quashed a defense subpoena to Facebook after finding that the defendant 'lacked a reasonable expectation of privacy in his messages because Facebook's Community Standards and terms of service warned users that Facebook reports child pornography if it becomes aware that it is being sent." *Id*. The government's citation is technically accurate but somewhat misleading. It is accurate that the district court decision that was appealed to the Seventh Circuit in *Bebris* found that the defendant lacked a reasonable expectation of privacy. The Seventh Circuit, however, did not so hold. Rather, the Seventh Circuit expressly declined to reach the issue. *Bebris*, 4 F.4th at 562 ("[W]e need not reach whether Bebris had a expectation of privacy in his Facebook messages."). Thus, the government has not cited to any Court of Appeals decision from outside of the Second Circuit supporting its argument.

The government turns next to district court cases from outside of this Circuit. (Dkt. No. 46 at ECF 14.) None of the district court cases cited by the government are persuasive because they are distinguishable. The analysis of each case relies on the terms of service of the particular ESP involved, but none of the cases involved the ESPs at issue in this case. *Stratton* involved a Sony PlayStation 3. *Stratton,* 239 F. Supp. 3d 1230, 1233 (D. Kan. 2017). *Sporn* involved Twitter. *United States v. Sporn*, No. 21-10016-EFM, 2022 WL 656165, at *1 (D. Kan. Mar. 4, 2022). *Tolbert* involved AOL. *United States v. Tolbert*, Cr. No. 14-3761 JCH, 2019 WL 2931659, at *4 n.3 (D. N.M. July 7, 2019).

In *Sporn*, the district court discussed at length the "robust" and stringent language that Twitter's terms of service, Rules and Policies, and Privacy Policy contained about preventing child exploitation. *Sporn,* 2022 WL 656165, at *1-3. That language included clear, straightforward statements such as "Twitter has zero tolerance towards any material that features or promotes child sexual exploitation, one of the most serious violations of the Twitter Rules" and "the consequence for violating our child sexual exploitation policy is immediate and permanent suspension." *Id*. at *3.

2

The government has not pointed to any such robust and stringent language in the terms of service of the ESPs here. The terms of service cited by the government do not advise users that ESPs will view their private messages without first obtaining a warrant. As recounted by the government, Snap's says simply that Snap may share user information. (Dkt. No. 46 at ECF 12.) Discord's says that Discord "may disclose information in response to a request for information." *Id*. Meta's says that "we access . . . your information . . . in response to a legal request [] like a search warrant, court order or subpoena []." *Id*. None of these statements is clear enough to defeat Austin's expectation of privacy. Meta was formerly known as Facebook, and at least one district court has held that the anemic language in Facebook's terms of service is insufficient to negate a defendant's expectation of privacy. *United States v. Irving*, 347 F. Supp. 3d 615. 623 (D. Kan. 2018) ("Facebook's TOS does not have explicit terms about monitoring user's accounts for illegal activities and reporting those activities to law enforcement. Instead, Facebook's TOS generally states that Facebook can collect data and information . . . Although Facebook's TOS does state that a user should not post content that is pornographic or unlawful, it makes these statements in the context of safety and in asking for the user's help 'to keep Facebook safe.'"). In sum, despite the government's arguments to the contrary, Austin retained a reasonable and legitimate expectation of privacy in his private files.

## II. THE PRIVATE SEARCH DOCTRINE DOES NOT EXCUSE THE WARRANTLESS SEARCHES.

The government argues that the private search doctrine excuses the warrantless searches. (Dkt. No. 46 at ECF 15-21.) This argument is without merit for three reasons. First, as discussed in the moving papers, no "private search" preceded Obrist's warrantless searches because the ESPs and NCMEC functioned as government actors/agents. (Dkt. No. 38-2 at ECF 4-7.) Second, even if the ESPs were private actors, there was no "private search" as to eleven of the images because there is no evidence that any human being at the ESP viewed the images before Obrist did. (*See government's chart at* Dkt. No. 46 at ECF 5.) Rather, some employee at some point in the past viewed a *different* image and applied a hash to it that later matched the hash on the images in this case.

3

Third, the government acknowledges that accepting its argument would require the Court to find that hashing technology is reliable. (Dkt. No. 46 at ECF 20.) In an effort to demonstrate reliability, the government has cited court opinions discussing the hashing technologies used by different companies. (Dkt. No. 46 at ECF 20-21, citing *United States v. Miller*, 982 F.3d 412, 430 (6th Cir. 2020) (discussing Google) and *United States v. Reddick*, 900 F.3d 636, 639 (5th Cir. 2018) (discussing Microsoft SkyDrive, a cloud hosting service[1].)) Neither of those companies is involved in this case. Further, the basis for the findings in *Miller* and *Reddick* was extremely flawed. In *Reddick*, the court misapplied Supreme Court precedent. The *Reddick* court's faulty analysis has been recognized by both the Sixth and the Ninth Circuits. *United States v. Wilson*, 13 F.4th 961, 979 (9th Cir. 2021); *Miller*, 982 F. 3d at 429. In *Miller*, the court misallocated the burden of proof. Rather than requiring the government to prove that the hashing technology was reliable, the court placed the burden on the defense to prove that it was not reliable. *Miller*, 982 F.3d at 430. The Ninth Circuit criticized this misallocation of the burden and cited it as one of its reasons for declining to follow *Miller*. *United States v. Wilson*, 13 F.4th 961, 979 (9th Cir. 2021). Rejecting both *Miller* and *Reddick*, the Ninth Circuit held, as the government acknowledges, that the private search exception does not apply in the circumstances presented here. (Dkt. No. 46 at ECF 20.) This Court should apply the Ninth Circuit's well-reasoned decision in *Wilson* to this case.

The government has not provided any evidence that the hashing technology used here is so sophisticated and foolproof that there is a "virtual certainty" that an image with a particular hash will contain child pornography. The declarations the government has provided from the ESP employees contain very little information about the hashing systems. None of that scant information establishes the "virtual certainty" required for the private search exception to apply. The burden on this issue is

---

[1] The government asserts that SkyDrive used a hashing technology called PhotoDNA and that PhotoDNA is "the same tool Snapchat uses." (Dkt. No. 46 at ECF 21.) However, the affidavit that the government has produced from Snapchat does not state that Snap used PhotoDNA hash technology in this case. Rather, it says that, in general, "Snap uses software tools such as PhotoDNA and Child Sexual Abuse Imagery (CSAI) Match technology." (Dkt. No. 46-16 at ECF 3 ¶ 11.) Thus, even if merely citing the Fifth Circuit's conclusions regarding the reliability of PhotoDNA were somehow a sufficient substitute for producing actual evidence before this Court, it is not clear that the Fifth Circuit's decision regarding Photo DNA is applicable to this case.

not on the defense. Rather, the burden is on the government to show that an exception to the warrant requirement applies. *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018). The government here has not done so. Accordingly, the private search doctrine does not excuse the warrantless search.

### III. THE EXCLUSIONARY RULE APPLIES.

The government argues that exclusionary rule should not apply because Obrist acted in good faith. (Dkt. No. 46 at ECF 22-23.) A well-trained officer would have been aware that the warrantless search was illegal because of the authority cited in this reply and the moving papers. Particularly in light of the concerns about intrusions into electronic privacy discussed by the Supreme Court in cases like *Riley v. California*, 573 U.S. 373 (2014), law enforcement should be deterred from such warrantless searches. Accordingly, this Court should apply the exclusionary rule.

### **CONCLUSION**

For the reasons discussed above and in the moving papers, the defense respectfully requests that the Court suppress all evidence obtained as a result of the warrantless searches. In the alternative, the defense requests that the Court conduct an evidentiary hearing.

DATED: August 28, 2023

          LISA A. PEEBLES
          FEDERAL PUBLIC DEFENDER
By:  */s/ Randi J. Bianco*
          Supervising Assistant Federal Public Defender
          Bar Roll No. 507514
          4 Clinton Street, 3d Floor
          Syracuse, New York 13202
          (315) 701-0080

cc:    Adrian S. LaRochelle, AUSA (by ECF)
       Paul J. Tuck, AUSA (by ECF)
       Austin Tennant (by mail)